Insurance Company, which is the defendant and the appellant in this matter.  Okay. Thank you. The next case on the argument calendar, Mundi v. United Union Security Life Insurance. When you're ready. Appellant goes first, and when you're ready. May it please the Court? Your Honor, my name is Kevin Rogers. I'm an attorney for a defendant, Union Security Life Insurance Company, which is the defendant and the appellant in this matter. If you could keep your voice up and maybe pick the microphone up just a little bit. Sure. There we are. Thank you. I represent Union Security Life Insurance Company. This appeal is from an order denying Union Security's motion to compel arbitration in this matter. And the Court denied the motion on two bases. Number one, that Union Security lacks standing to compel arbitration as a non-signatory to the arbitration agreement. And number two, that Union Security waived its right to compel arbitration. With regard to the ---- Standing doesn't sound exactly it. The point is that Union Security had not signed an arbitration agreement with the appellee. Mundi had not agreed to arbitrate with Union Security. And why should their ---- arbitration is a creature of contract, and there's no agreement here saying that this dispute was to be arbitrated. Why should it be arbitrated? Federal courts, although this, the Ninth Circuit, as far as in a published decision, has not dealt with the circumstance of a non-signatory like Union Security seeking to compel a signatory to arbitrate. The Court has held, has dealt with the inverse situation. In the Comer case, the Letizia v. Prudential Box Securities cases, both those cases dealt with a concept called equitable estoppel. Now, Letizia case ---- Kagan. And what is equitable estoppel usually suggests some sort of wrongdoing or fairness concern. What wrongdoing or fairness concern here is there? If Mundi had sought to arbitrate against Union Security, would Union Security have agreed to do that? Presumably not. You hadn't agreed to arbitrate. Where is the equitable estoppel hook here? Well, there are really two lines of cases dealing with equitable estoppel. Estoppel generally, by itself, does have a fairness connotation. But the doctrine of equitable estoppel, as applied by Federal courts across the country with regard to the Federal Arbitration Act, arbitration is really taking on two different lines of cases. One line of case deal with when you have claims that intertwine. For instance, you have a signatory that sues a signatory and a non-signatory, and the claims are intertwined together. They relate to an agreement between the parties, and the courts have recognized those cases are arbitration. Let me come back to the first question that Judge Berzon asked, and that is, I'm just looking at the arbitration contract, and I understand that non-signatories can sometimes take advantage of contracts as third-party beneficiaries of the contract. There's no dispute about that. That applies to arbitration contracts, to all kinds of contracts. But I just read the contract, and it says, I'm now reading section 25, if the bank and I are not able to resolve our differences informally, I agree that any dispute between me and the bank will be settled, da-da-da. A dispute is any unresolved disagreement between the bank and me that relates. This is not a dispute between Mr. Mundy or Mr. Mundy's estate and the bank. How do you come within the four corners of the contract? Whether or not you signed it, you're just not in the contract. There is one aspect of this case that relates to the kind of product that was actually issued that I think is helpful. Is this a dispute between Mundy and the bank? He does make claims regarding wrongdoing at the bank, Your Honor. Is the bank a party? No, Your Honor. Is he asking anything from the bank? Not that I'm aware of, Your Honor. I don't see, then, that this is a dispute between him and the bank. One point I would like to make, Your Honor, is that the kind of insurance product in this case is a little different than typical insurance products. Well, I understand that. And what I want to say is that it was sold by Wells Fargo. Wells Fargo offered credit insurance to the borrower in conjunction with the transaction. He elected to purchase it. It was financed together as part of the total loan. The premium was financed in. I understand all that. And the defense, well, there was a rescission in this case based upon an answer that Mr. Mundy gave on his application of credit insurance. So the dispute has nothing to do with the contract between him and the bank, either. Why? The dispute has nothing to do with the agreement between him and the bank, and the dispute is not between him and the bank. Well, Your Honor, I think that it does, and this is why. If you look at his defense in his complaint, paragraph 18 of his complaint is his defense to Union Securities Act rescission. And he basically asserts three things. He says, well, the application was not something a layperson could understand. And then he makes two other ones. He says Mr. Mundy didn't understand English, didn't comprehend English very well, and the paragraph 18 says the defendant's agent knew that but yet didn't explain it to him. Well, the defendant's agent was Wells Fargo. Then the second, the other point that's made in paragraph 18 is that Wells Fargo is that the defendant put him in an impossible situation where he had to answer this question, a health question, in front of his business partner. And the ---- All right. So he may have a problem with Wells Fargo as agent for Union Security, but he still has no problem with Wells Fargo qua bank nor any problem with Wells Fargo but the having to do with the agreement in which the arbitration clause exists. There's nothing, no clause or provision of that agreement that's involved here. Is that correct? Well, now, to the extent that the claim to the extent that the bank's action will constitute a tort, that would fall under the arbitration provision. Well, I would be very sympathetic to your argument if the bank were sued, but the bank hasn't been sued. And there may be a point, depending on if this matter goes back to district court, goes to arbitration, where the bank will need to be brought in. Well, then that's a different proposition. Right. Mr. Rogers, let me ask you to look at the problem a little bit differently now. I know there are cases where an arbitration agreement has been construed, you can say, more or less, say, you know, for the benefit of a non-signatory third party. Right? We know that case now. Which one of those cases is the closest to your case? I think the American Bankers Insurance Group v. Long case out of the Fourth Circuit. And why do you say that was, you know? Because. Why do you say your claim comes under that case? Well, every equitable style of claim is different based on facts, obviously. But the facts in that case and the reason that the Fourth Circuit compelled arbitration was based upon the conclusion that what the plaintiff was asking was that for the defendants to fulfill contractual obligations under the contract with arbitration provision. And the courts found that that claim, the court in the Fourth Circuit found that claim was tight enough and presumed the existence of the contract in arbitration. All right. So some way, then, doesn't that mean some way the claim here, namely the claim for life insurance, has to be tied to the underlying contract between Wells Fargo, right, and the plaintiff? Well, the court certainly recognized that there should be a degree of relatedness between those. And credit insurance exists to pay off or to satisfy a borrower's obligations to a lender. The benefits are paid to the lender. The borrower doesn't ever receive the benefits. They go to the lender directly. And that's the nature of credit insurance is to satisfy contractual obligations in a loan agreement. Of course. And I would submit that that is tied enough to the transaction where arbitration should be compelled, and particularly when you have circumstances, when you have claims made based upon what the bank did as far as what's the central issue in the case. You know, I've got a different question, and that is the amount at issue here is $50,000. I mean, that's the policy amount. And then there may be some add-ons to that. But this is a fairly small amount of money. Your defense is a fairly straightforward defense. You start out in state court. You're moved to federal court. You seek arbitration. You're now up here on appeal. You guys have spent an awful lot of money clearing your throats, and you've still not gotten to what is a very simple question. Why are we doing this? Well, I think there are two factors regarding the court's order. There is one issue regarding the waiver decision by the district court, which as a matter of case law and for what we set forth in the briefs, was has an effect beyond just this case. And the application of waiver under Davis could apply to many other cases. And that matter is important enough to this insurer, the client, to make sure that that issue is fully advanced. Equitable estoppel also is an important issue. It's a burgeoning the equitable estoppel cases across the country continue to accumulate and circumstances and boundaries are being formed on when arbitration can be compelled. Okay. We've got 12 seconds. Let's hear from the other side, and then we'll give you a minute. Thank you, Ron. Shane Reich, appearing for the Monday estate. And if you could also keep your voice up. Sure. Well, I believe it was fully briefed. I'd just like to respond to a couple of points that were made. As far as the American Banker v. Long case, I'm not convinced that, well, as we set forth in our paperwork, we don't think that's the most analogous case. Regardless, that case itself recognizes that without the alleged breach in the underlying contract containing the arbitration provision, that there would be no issue. And that's a common thread throughout all of these equitable estoppel cases. Well, the Brantley case, also in the Fourth Circuit, isn't that really the closest in case? Yes. What? I'm sorry? Yes, I believe so. So that's also in the Fourth. That's almost exactly the same as this case. Yes. The issue being that the other way. Yes. Yes. And that's the situation where there isn't a breach involved in the underlying contract containing the arbitration provision. There are obviously the other threads that are raised in our opposition papers that – well, first of all, the standard of review here, we're talking about estoppel. We're not talking about a straight contractual arbitration case. So we're looking for abuse of discretion or clear error of law. And what we're talking about here is that the district court made the determination that there was no equitable or that there was insufficient equitable argument to compel arbitration, in part because there was no interconnectedness with the agreement having the arbitration provision. Again, as we recognize, the arbitration provision itself excludes disputes between third parties. It would be helpful to me to – in terms of thinking this through and presumably adding an opinion if we have to because we don't really have much case law on this. What are the – I understand the boilerplate that there are – they say there are two lines of equitable estoppel cases in the arbitration area. But what is the underlying idea about when you would apply an arbitration clause against someone who didn't – well, by someone who didn't sign it and call it equitable estoppel? What's the notion? And what was that – from which you would derive a set of circumstances? Okay. First of all, in order to answer that question, I have to state that we dispute that there are two separate lines of equitable estoppel cases. The second line that they're asserting is based on the Sunkist case, which, if you look at the case, it sets forth the same real standard. And that's if the party seeking to avoid arbitration is relying to a very significant extent on the contract that contains the arbitration clause. The courts have found in many cases that equity dictates that they should arbitrate in that context. But there's no interconnectedness here that approaches that in any respect. I mean, with the Sunkist case, for example, the interconnectedness flows from the fact that the dispute is based on a breach of the underlying contract holding the arbitration provision. In that case, the dispute was over whether or not there was interference with contract or related torts related to that underlying agreement. Here, there's no connectedness aside from the fact that the agreement with Wells Fargo existed and our client owed Wells Fargo money. So I believe that's what's addressed in the estoppel cases, whether or not the action at hand is so fundamentally intertwined with that other contract, whether it actually relies on the rights and duties created in that contract, whether that -- Kagan. The notion being that those rights and duties are kind of limited by the arbitration obligations so that they go together. So if you're going to rely on these rights and duties, you have to buy into the procedure that's in that same agreement essentially. Yeah. I believe that's fair. I believe that's a fair assessment of what those cases hold. Okay. As far as other issues involved, the appellant's insurance contract itself states quite explicitly that it is the entire agreement between the parties, and there's admittedly no arbitration provision here. So what we have here --- The arbitration clauses worded as it is here, i.e., quite specific as to who the dispute has to be between. In other words, the arbitration clause here doesn't just say you have to arbitrate any dispute about X. It defines the parties to the arbitration. Is that true of the other cases you know? My understanding is that not all of the cases recite what the arbitration provision contained, but the cases that I've seen, the arbitration were all quite broad in terms of all disputes related to this contract. Without defining the parties? Correct. Correct. And that, in passing, we referenced that in our opposition papers, that one of the things that the appellant is asking for is arbitration under the American Arbitration Association, and the arbitration clause, the suggested arbitration clause that they set forward is quite broad, and that is true of most arbitration clauses. Well, I understand broad. I'm not talking about broad and narrow. I'm talking about this particular feature. Does it say who the dispute has to be between? I don't believe so. As opposed to substantively. I don't care about substantively broad. I want to know whether they deal with the parties to the dispute. I believe that the majority of the arbitration clauses were just broadly worded statements that ---- That X kind of dispute is to be arbitrated. Correct. So it may be that we don't even, given the specific wording of this dispute between me and the bank, we don't get to equitable estoppel at all, given that this is not a dispute between, quote, me and the bank, close quote. Well, yes. Yes. Or if you do get to equitable estoppel, you know, how would equity favor that? How would equity ---- Yeah. Or to say the equitable estoppel argument. Another way to say it, equitable estoppel argument then becomes extremely easy. Yes. Okay. And then, again, the issues with specific California insurance law, the Davis case and the specific insurance statutes, that can either be handled directly. I gather that the statutes really don't apply to this kind of policy. But what about ---- Is that wrong? The statutes you're relying on seem to apply to disability policies, but not to this policy. One of the statutes in particular seems to apply exclusively to disability policies. And then we had our argument, which the Court can accept or not, that the definition of disability policy was very expansive. Okay. But several of the other sections relate to insurance policies in general, that the whole contract should be contained in the actual ---- All right. But your strongest argument would actually be this California Supreme Court case about insurance. But that's a case. And the question is, are the appellant's rights under the McCarran-Ferguson Act doesn't apply to judge-created laws opposed to statutes? Well, I don't believe that there's been a specific holding on that anywhere that I'm aware of. Really? We did cite a case that isn't dealing exclusively with the McCarran-Ferguson Act that states that law includes both judge-made and statutory. And what about the various ERISA cases about the insurance exception? Do those apply to judge-made law? I don't know the answer to that, but I'm ---- I will grant that most of the cases deal with statutes. I don't ---- In my research, I didn't find any saying that it couldn't deal with judge-made law, and I assume that the appellant didn't either because they didn't cite any. But separate and apart from that, there's the idea here with that it may not actually be governed by the Federal Arbitration Act because we don't actually have an arbitration agreement. The issue here is trying to force arbitration based on estoppel. And reading the Act for what it says, it speaks of an actual agreement. It doesn't speak of these secondary arguments that somebody should use. I guess all of the case ---- all of the Federal cases must have been dealing with the Federal Arbitration Act. And all of the Federal cases that apply to corporal estoppel, they must have been attempts to arbitrate under the Federal Arbitration Act, not under State law. Well, that's a ---- yes, because the party wishing to enforce arbitration will always want to come under the Federal Arbitration Act. Right. So, therefore, by allowing this equitable estoppel notion in Federal court, they were somehow holding that the Federal Arbitration Act allows that notion, I guess. Okay. You've got five seconds. That will do it then. Thank you. Thank you very much. Would you like a minute to respond? If I may address Judge Berzon's question regarding other cases and whether it has similar language. There is a recent holding within the past two months by the Fifth Circuit called the Shearer v. Greentree case. Now, it's not in the brief. I haven't submitted it to the court. The Fifth Circuit recognized that. There's a procedure in this circuit called the 28J letter. And if you would like to provide that by a 28J letter, that's the way to do it. Well, and I realize that, Your Honor. The reason why I didn't is because Shearer was a little different factually. I see. In Shearer, the arbitration agreement just says that we agree to arbitrate any claims that relate to this agreement. They use broad terms. It doesn't have parties. And what the Fifth Circuit held is they said, you know, we've dealt with all of equitable estoppel in a series of cases, but we've never held that you have to get to that. In fact, what the Fifth Circuit says, you don't even have to get to equitable estoppel when you look at the terms of the agreement. They recognized that other cases that dealt with application of equitable estoppel had terms limiting the parties. And in those cases, the court looked at equitable estoppel. And the Shearer case recognized that it wasn't necessary to look at equitable estoppel because there wasn't any limitation to the parties in the arbitration agreement. Okay. What about, isn't the Brantley case in the Fourth Circuit the closest into this one? Isn't that basically the same case? No, Your Honor. Brantley's different. Brantley, the claim in Brantley was that the borrowers were overcharged for credit insurance premiums by, at the time that they purchased the credit insurance. So what? I mean, it was a question of how much did the insurance charge. I know, but in terms of the arbitration issue, isn't it the same? In other words, it was a mortgage, it was an insurance contract appended to a mortgage or a loan, and they were trying to take advantage of the arbitration agreement and the loan agreement because there wasn't one in the insurance. Is that not right? Well, that's correct, Your Honor. So it's exactly the same. I will submit the facts are different in Brantley, Your Honor. But I don't see what difference it makes whether there's a dispute about money or a dispute about the application. I mean, the arbitration problem is the same, and I'm simply saying that that's the closest in case. So if we look to the Fourth Circuit, that's where we would look, not to this other case. It's different. Our position is, Your Honor, that this case is about union securities satisfying the borrower's obligations to the lender. And Brantley was a question about whether the insurance company was charging excessive premiums through credit insurance. Your Honor, do you have any further questions? Any further questions from the bench? No. Thank you very much. The case of Mooney v. Union Security Life Insurance is now submitted for decision. Thank both parties for their arguments.
judges: Tashima, Fletcher, Berzon